582 So.2d 725 (1991)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
GAINESVILLE SUN PUBLISHING CO., Appellee.
No. 90-3490.
District Court of Appeal of Florida, First District.
July 3, 1991.
*726 William A. Frieder, Asst. Gen. Counsel, Dept. of Health and Rehabilitative Services, Tallahassee, for appellant.
George Freeman, New York City, for appellee.
JOANOS, Judge.
The Department of Health and Rehabilitative Services (HRS) has appealed an order of the trial court granting the petition of appellee Gainesville Sun Publishing Co. (Sun) for disclosure of child abuse reports and investigation records pursuant to section 119.07(7), Florida Statutes (Supp. 1990). We affirm.
On August 12, 1990, Charles David Chatman shot his family to death (including his 10-year old stepdaughter, Bridgette Hurst), then killed himself. Articles published by the Sun indicated that the deaths occurred soon after the family returned from a vacation at a Florida condominium. During that vacation, HRS received a report that Chatman sexually abused Bridgette at the condominium pool. HRS interviewed Chatman while the family was still vacationing, after which he was reportedly despondent.
Section 415.51(1), Florida Statutes, provides that "in order to protect the rights of the child and his parents or other persons responsible for the child's welfare, all records concerning reports of child abuse or neglect ... shall be confidential and exempt from the provisions of s. 119.07(1)." Section 119.07(3)(a) states that "all public records which are presently provided by law to be confidential ... are exempt from the [Public Records Act]." On July 3, 1990, the Legislature amended the Act to permit petition for access to records concerning an HRS child abuse investigation:
Notwithstanding the provisions of paragraph (3)(a), any person or organization ... may petition the court for an order making public the records of [HRS] that pertain to investigations of alleged ... child abuse, neglect, abandonment, or exploitation. The court shall determine if good cause exists for public access to the records sought or a portion thereof. In making this determination, the court shall balance the best interest of the ... child who is the focus of the investigation, and ... the interest of that child's siblings, together with the privacy right of other persons identified in the reports against the public interest. The public interest in access to such records ... includes the need for citizens to know of and adequately evaluate the actions of [HRS] in providing ... children of this state with the protections enumerated in ss. 415.101 and 415.502.
Section 119.07(7)(a), Fla. Stat. (Supp. 1990).
On October 1, 1990, the Sun filed a petition pursuant to this section, seeking HRS records involving the abuse and death of Bridgette Hurst, and the investigation of Chatman's alleged actions. The petition alleged generally that disclosure was necessary to provide citizens with information to evaluate HRS's performance of its duties, and was accompanied by an affidavit from a Sun reporter. The affidavit averred that there were "questions as to the events leading up to Miss Hurst's death, including the source, nature and substance of the original report of child abuse against Mr. Chatman, and the substance and tenor of the ensuing HRS investigation which may well have led to the shootings. These questions may be better answered for the public [with] the HRS records requested."
After an untranscribed hearing, the trial court entered an order noting its obligation under section 119.07(7)(a) to determine good cause by balancing the privacy rights of the child, its siblings, and others disclosed in the reports against the public interest. To that end, the court ordered HRS to deliver the requested records for in camera inspection, whereafter they would remain under seal until further order. HRS objected to the in camera inspection, maintaining that the trial court could not view the records until the Sun had shown good cause for disclosure. The objection *727 was evidently overruled, as the in camera inspection took place as ordered.
An order requiring disclosure was thereafter entered. In balancing the interests set forth in section 119.07, the court found that there were no privacy interests to compete with the public interest in disclosure, in that, due to the circumstances of the case, all of the affected parties were dead. The court further held that the release of the records would serve "to supplant speculation with fact." The court thereupon ordered HRS to disclose the records, eliminating references therein only to the individual who originally reported the abuse, and to another living adult.
HRS alleges first that the trial court erred in failing to find good cause for disclosure before requiring production of the records for in camera inspection. We disagree. Section 119.07(7)(a) states that the obligation of the court is to find "good cause for public access to the records sought." It does not specify that the showing of good cause must be confined to the four corners of the petition, nor does it prescribe or bar particular methods for the determination of good cause. In particular, it does not forbid the trial court's in camera inspection of the records prior to its ruling.
Further, the statute requires the trial court to determine good cause by balancing "the best interest of the child who is the focus of the investigation together with the privacy right of other persons identified in the reports" against the public interest. The petitioning party has no way of knowing the identity of "other persons identified in the reports," which are confidential until the trial court finds good cause for disclosure. Therefore, the petitioner could make no showing in the initial petition as to the privacy interests of such persons, and the trial court would have no basis on which to find good cause without reviewing the records themselves. We find no error in the in camera inspection conducted herein.
HRS next contends that the trial court erred in finding good cause without an evidentiary hearing. Once again, the controlling statute does not require such a hearing in advance of a finding of good cause. In most cases, such a hearing would be required to ascertain the various privacy interests affected by the disclosure. However, in this case, the abused child, the accused individual, and the child's siblings and mother, were all dead. Aside from these persons, only the abuse reporter and another living adult were mentioned in the reports, and the trial court required their names to be stricken prior to disclosure. Therefore, no hearing was required on the issue of privacy interests.
As for the competing public interest, the statute itself provides that the public interest in access to such records "includes the need for citizens to know of and adequately evaluate the actions of [HRS] and the court system" in protecting the children of the state. The Sun's petition and affidavit alleged a connection between the HRS investigation initiated in the latter stages of the family's vacation, and the triple murder and suicide which occurred the day after their return. Therefore, no evidentiary hearing was required to show that the evaluation of HRS's actions was at issue. Under the circumstances of this case, the trial court did not err in finding good cause for disclosure without an evidentiary hearing.
Finally, HRS alleges that the trial court's order did not state sufficient grounds for its finding of good cause. As previously stated, the trial court was required to "balance the best interest of the child who is the focus of the investigation together with the privacy right of other persons identified in the reports against the public interest." Here, the child and most of those persons identified in the reports were dead. Based on this fact, the trial court found that there were no privacy interests at issue. Given this finding, and the stated public interest in knowledge and evaluation of the actions of HRS and the court system, we find that the order herein was adequate.
Affirmed.
SMITH and BARFIELD, JJ., concur.